

| | | |
|---|---|---|
| **MURIEL GOODE-TRUFANT**<br>*Corporation Counsel* | THE CITY OF NEW YORK<br>LAW DEPARTMENT<br>100 CHURCH STREET<br>NEW YORK, NY 10007 | Jay Cullen<br>Administrative Law Division<br>Phone: (212) 356-2647<br>jecullen@law.nyc.gov |

August 5, 2025

**BY ECF**
Honorable Jennifer L. Rochon
United States District Court
Southern District of New York
500 Pearl St.
New York, New York 10007

       Re:  <u>American Honda Finance Corporation and HVT Inc. v. City of New York</u>
            24-CV-1137 (JLR)

Your Honor:

I am an attorney in the office of Muriel Goode-Trufant, Corporation Counsel of the City of New York, counsel for the Defendant, City of New York ("City") in the above-entitled action. Pursuant to Section 3(I) of the Court's Individual Rules, I write to request that the post-discovery conference be converted into a pre-motion conference ahead of Defendant's anticipated motion for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Defendant seeks dismissal of Plaintiffs' Fourth and Fifth Amendment claims and their state law equivalents.

As background, Plaintiffs are either lienholders or leaseholders in ten vehicles that are the subject of this lawsuit (the "Subject Vehicles"). For each of the Subject Vehicles, Plaintiffs allege that their customers failed to make required payments under their contracts, which then entitled them to recover the vehicles.

Between November 21, 2019, and February 6, 2024, the New York City Department of Sanitation ("DSNY") located the Subject Vehicles on public New York City streets and marked them as derelict and abandoned. Some of the vehicles were completely burned out, while others had all the wheels and hood removed, or all of the seats and doors were removed. It is without dispute that all were extensively damaged, lacked license plates, and were left abandoned on the City's streets for an extended period of time, posing a danger to public safety. Subject to the City's Derelict Vehicle Operations Policy ("DVO"), the Subject Vehicles were marked with a notice requiring the owners to remove the vehicles from the street, and then, when the cars were not removed, the City contracted to have the cars towed and removed to salvage yards. Prior to their removal, the Subject Vehicles were inspected by DSNY employees to ensure they met the requirements of New York State Vehicle and Traffic Law Section 1224 ("Section 1224") and Title 16 of the Rules of the City of New York, Section 1-05(e) ("Rule 1-05(e)"). These provisions of law convey ownership to the City of New York when vehicles on City streets are left derelict, abandoned and without licenses plates, if they are determined to be worth less than $1,250. <u>Id</u>. DSNY determined that all of the

Subject Vehicles satisfied these requirements. Therefore, the Subject Vehicles were properly removed from the City streets and disposed of by the salvage yards.

**Plaintiffs' Fourth Amendment Claim Fails as a Matter of Law:** Generally, "[w]arrantless…seizures are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." United States v. Weaver, 9 F.4th 129, 138 (2d Cir. 2021). One exception applicable here is the community caretaking exception. Vehicles may be taken into custody in the interests of public safety as part of the local government's "community caretaking functions." See South Dakota v. Opperman, 428 U.S. 364, 368 (1976) (*citing* Cady v. Dombrowski, 413 U.S. 433, 441 (1973)). The Supreme Court has stated that "[t]he authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge." Id. at 369. Here, the Subject Vehicles were all missing license plates, in a dilapidated and derelict condition, and were determined to qualify for the DVO program under Rule 1-05(e) by DSNY employees. The policy of removing abandoned, derelict vehicles, furthers the City's interest in maintaining public safety, clearing unnecessary congestion, and keeping its streets clean.

Plaintiffs also argue that the subsequent disposal of the Subject Vehicles was itself a Fourth Amendment violation, even if the initial seizure was valid. Compl., ¶ 46. This argument is also misguided. First, it is generally understood that the "subsequent destruction of… property by the police is more properly addressed as a claim for the deprivation of property under the Due Process Clause of the Fourteenth Amendment," rather than under the Fourth Amendment. See Bradley v. City of New York, 04-cv-8411, 2007 U.S. Dist. LEXIS 7811, *12 (S.D.N.Y. Jan. 25, 2007); Radice v Doe, 24-cv-531 2024 US Dist LEXIS 123382, at *4 (D Conn, July 14, 2024) ("Research reveals no case…considering a Fourth Amendment claim… where the property was lost or destroyed at some point after it was properly confiscated. The Court considers Mr. Radice's claim to be better asserted as a claim for destruction of property without due process."). Plaintiffs' attempts to stretch the Fourth Amendment into the post-seizure treatment of property has been rejected by the Second Circuit: "Where an initial seizure of property was reasonable, the government's failure to return the items does not state a separate Fourth Amendment claim of unreasonable seizure." Bennett v Dutchess County, 832 F App'x 58, 59 (2d Cir 2020).

Moreover, in advancing this argument, Plaintiffs fail to acknowledge the fact that under both local and state law, the City became the title owner of the Subject Vehicles at the time they were tagged and removed. See Section 1224(2). It is thus unclear how Plaintiffs can legitimately argue that the City violated the Fourth Amendment when it removed and arranged for the disposal of its *own* vehicles.

Finally, it is well-understood that reasonableness is the "central requirement" of the Fourth Amendment. See, e.g., Texas v. Brown, 460 U.S. 730, 739 (1983); Terebesi v. Torreso, 764 F.3d 217, 231 (2d Cir. 2014). In determining whether a government seizure is reasonable under the Fourth Amendment, one must undertake a careful balancing of the government and private interests at issue. Soldal v. Cook County, Illinois, 506 U.S. 56, 71 (1992). Here, DSNY employees were dispatched (often based on community complaints) to inspect and then arrange for the removal of vehicles abandoned on the City's streets, that lacked license plates, and were indisputably in a horrible, derelict condition, posing a threat to public safety. The City's significant

public safety and roadway interests in immediately removing the dilapidated vehicles from the public streets, outweigh the Plaintiffs' contractual interests in extremely damaged cars. Furthermore, the removal and disposal of the vehicles was explicitly authorized by Section 1224 and Rule 1-05(e) and was thus entirely appropriate.

**Plaintiffs' Fifth Amendment Claim Fails as a Matter of Law:** The Fifth Amendment, made applicable to the States under the Fourteenth Amendment, prohibits the government from taking "private property for public use without just compensation." Palazzolo v. Rhode Island, 533 U.S. 606, 633 (2001). Here, the derelict vehicles were not "used" by the City in any way, shape, or form. Indeed, they are the blight on the streets that necessitated government action. While Plaintiffs are likely to point to Santander Consumer USA, Inc. v. City of Yonkers, 22-CV-8870, 2024 U.S. Dist. LEXIS 211330 (S.D.N.Y. Nov. 18, 2024) for the proposition that transferring abandoned vehicles to contractors can constitute a public use, it bears noting that the vehicles in the Yonkers case were in a condition where auction was viable and there was no allegation that the cars themselves were completely derelict. That is not the case here, where the City obtains no compensation from the removal and disposal of abandoned, derelict vehicles.

Notably, the City, became the sole owner of the vehicles through Section 1224, not eminent domain. In Bennis v. Mich., 516 U.S. 442, 443 (1996), the court explains, "the government may not be required to compensate an owner for property which the government has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain." While the Yonkers court found that obtaining title through 1224 could be a taking, that holding, which is not binding on this Court, stands in stark contrast to other courts around the country that have addressed the issue and found otherwise. See, e.g., Tate v. Dist. of Columbia, 627 F.3d 904, 909, (D.C. Cir. 2010) (the towing and sale of plaintiff's vehicle did not "constitute a taking for public use for which she was entitled to compensation under the Fifth Amendment's Taking Clause."); Brite Fin. Servs., LLC v. Bobby's Towing Serv., LLC, 461 F. Supp. 3d 549, 558 (E.D. Mich. 2020) (holding that even though some of the proceeds from the towing fees go to government actors, the acquisition of the abandoned cars is not pursuant to eminent domain and thus not a taking); Olivier v. Hicks, No. 17-cv-01300, 2018 U.S. Dist. LEXIS 95282, at *6 (M.D. Tenn. May 14, 2018) ("[City] did not take [plaintiff's] property pursuant to the power of eminent domain, but merely towed and stored the vehicles . . . . The vehicles were neither taken for public use nor for the purpose of transferring them to [private parties]. It is therefore apparent that [plaintiff] cannot sustain a [Fifth Amendment] claim."); Mateos-Sandoval v. Cty. of Sonoma, 942 F. Supp. 2d 890, 911 (N.D. Cal. 2013).

For the reasons stated above, Defendant requests to convert the post-discovery conference to a pre-motion conference and that this Court permit Defendant to file its motion for partial summary judgment on Plaintiffs' Fourth and Fifth Amendment claims, and their state law equivalents. Thank you in advance for your consideration of this request.

          Respectfully submitted,

          *Jay Cullen*
          Jay Cullen
          Assistant Corporation Counsel

cc:    Counsel for Plaintiff via ECF