UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
AMERICAN HONDA FINANCE CORPORATION and HVT INC.,

Plaintiffs,

-against-

THE CITY OF NEW YORK,

Defendant.
------------------------------------------------------------------x

**DEFENDANT'S [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW**

24-cv-1137(JLR)

## PRELIMINARY STATEMENT

Pursuant to Rule 5(C)(iii) of the Court's Individual Rules, Defendant submits its proposed findings of fact and conclusions of law. Plaintiffs are lienholders and leaseholders who bring the instant lawsuit seeking to recover damages associated with ten vehicles disposed of by the City. The ten vehicles in question (the "Vehicles")[1] were left strewn about the City streets in varying levels of dilapidation. Some had broken glass with missing doors and wheels, others had their interiors and engines stripped, others were burned out. None of them had license plates. Through the New York City Department of Sanitation's ("DSNY") Derelict Vehicle Operations Policy ("DVO Policy"), the City removed and disposed of these derelict vehicles in furtherance of

[1] The ten vehicles include the following: ("Vehicles"): A 2016 Honda Pilot bearing VIN 5FNYF6H51GB105534 (the "Cruz Vehicle"); a 2018 Honda Civic bearing VIN SHHFK7H59JU413551 (the "Griffin Vehicle"); a 2015 Honda Accord bearing VIN 1HGCR2F38FA215873 (the "Khan Vehicle"); a 2016 Honda Accord bearing VIN 1HGCR2F33GA161075 (the "Smith Vehicle"); a 2017 Honda Accord bearing VIN 1HGCR2F53HA213582 (the "Vasquez Vehicle"); a 2020 Honda CR-V bearing VIN 2HKRW2H51LH659777 (the "Beatty Vehicle"); a 2020 Honda Accord bearing VIN 1HGCV1F32LA098826 (the "Jones Vehicle"); a 2021 Honda Accord bearing VIN 1HGCV1F40MA030678 (the "Philbert Vehicle"); a 2021 Honda Civic bearing VIN 2HGFC2F6XMH500730 (the "Rodriguez Vehicle"); a 2022 Acura MDX bearing VIN 5J8YE1H48NL009540 (the "Salgado Vehicle"). See September 28, 2026 Opinion and Order on Summary Judgment, Dkt. No. 73 at 3.

its obligation to ensure the public health, safety and welfare, as it is authorized to do under New York State Vehicle & Traffic Law ("VTL") Section 1224 (hereinafter "Section 1224").

In their complaint, Plaintiffs claim that the DVO Policy violates the 4th, 5th, and 14th Amendments to the U.S. Constitution because the City: (1) seized the vehicles without a warrant, and pursuant to no valid warrant exception, (2) took Plaintiff's property without providing just compensation, and (3) failed to provide notice to Plaintiffs that the Vehicles were being destroyed.

Plaintiffs moved for summary judgment with respect to their 4th, 5th, and 14th Amendment claims. The City cross-moved for partial summary judgment on Plaintiffs' 4th and 5th Amendment claims. By Opinion and Order dated September 28, 2026 ("Opinion and Order"), District Judge Rochon granted in part and denied in part each parties' motions. Specifically, Judge Rochon found in favor of Plaintiffs on their 14th Amendment claim regarding nine of the ten vehicles and awarded them nominal damages. See ECF 73. The City prevailed on summary judgment as to Plaintiffs' claims for declaratory relief, injunctive relief, and 4th Amendment claims. Regarding Plaintiffs' 5th Amendment takings claim, the Court found in favor of Plaintiffs on four of the vehicles (the Khan, Smith, Vasquez and Griffin vehicles), and found in favor of the City on the Salgado vehicle.[2] As to any takings claim regarding the Beatty, Rodriguez, Jones, and Philbert vehicles, the Court will conduct a bench trial to determine the wholesale value of these vehicles. If Plaintiffs cannot demonstrate that the wholesale value of each of these four vehicles exceeds $1,250, then ownership of those vehicles vested with the City pursuant to Section 1224 and no taking has occurred.

---

[2] The Court determined that all claims regarding the Cruz vehicle were time-barred. See Opinion and Order, at 20.

Plaintiffs have failed to demonstrate that the wholesale value of the Beatty, Rodriguez, Jones, and Philbert vehicles each exceeded $1,250 at the time they were removed by the City. In support of their inflated valuations, Plaintiffs put forth Paul Fallati as a purported "expert" who is in the business of buying vehicles at auction, fixing them up and then selling those vehicles. In fact, with respect to the ten vehicles at issue in this action, Mr. Fallati incorrectly bases his valuations for the vehicles on totaling up values for individual car parts. Indeed, the plain language of Section 1224(2) requires that the valuation used be the **wholesale value of the vehicle**. Furthermore, Plaintiffs' purported expert valued the vehicle parts based on the prices of off-market car parts in 2025 when many of these vehicles were seized years earlier, some in 2019 and 2020.

Finally, the DVO Policy in effect at the time required multiple layers of DSNY employee review to ensure that the vehicles removed fit within the confines of the Policy, namely that they were found without license plates, in a dilapidated condition, and abandoned for a certain amount of time. Moreover, based on DSNY's observations of the physical condition of each vehicle which included, for example, burned out car frames, broken windows, missing wheels, stripped and missing pieces of engines, the wholesale value of each vehicle at the time of removal was reasonably estimated to be $1,250 or less.

Plaintiffs fail to demonstrate that the wholesale value of the Beatty, Rodriguez, Jones, and Philbert vehicles exceeds $1,250 and, therefore, no taking has occurred with regard to those vehicles and no award of just compensation is warranted. As for the Khan, Smith, Vasquez and Griffin vehicles, where the Court has already determined liability, Plaintiffs similarly cannot demonstrate that the wholesale value of each of these vehicles exceeds $1,250 and, thus, any damages or just compensation award cannot exceed that amount for each vehicle.

## STANDARD OF REVIEW

To prevail on their claims, Plaintiffs bear the burden of proof to present evidence in support of the allegations set forth in the Complaint and prove those allegations by a preponderance of the evidence. Miner v. City of Glens Falls, 999 F.2d 655, 660 (2d Cir. 1993); Ruggiero v. Krzeminski, 928 F.2d 558, 562 (2d Cir. 1991). As the finder of fact, the Court is entitled to make credibility findings about the witnesses and testimony and to draw reasonable inferences from the evidence presented. See Merck Eprova AG v. Gnosis S.p.A., 901 F. Supp. 2d 436, 448 (S.D.N.Y. 2012), *aff'd*, 760 F.3d 247 (2d Cir. 2014). See also Krist v. Kolombos Rest., Inc., 688 F.3d 89, 95 (2d Cir. 2012) (in a bench trial, "[i]t is within the province of the district court as the trier of fact to decide whose testimony should be credited").

## PROPOSED FINDINGS OF FACT

**Plaintiffs and Their Interests in the Vehicles**

1. AHFC finances motor vehicle purchases. See Opinion and Order at 3. In the ordinary course of its business, it takes assignments of retail installment contracts and holds liens in the financed vehicles as security for repayment. Id.

2. HVT conducts a related leasing business and holds title to vehicles during the terms of its leases. Id. Plaintiffs regularly finance or lease thousands of vehicles in New York. Id.

3. AHFC held perfected liens on five of the Vehicles — the Cruz, Griffin, Khan, Smith, and Vasquez Vehicles. Id.

4. The Beatty, Jones, Rodriguez, and Salgado Vehicles — were leased vehicles titled to HVT. Honda Lease Trust ("HLT") held title to the Philbert Vehicle. Id. at 4.

5. The relevant borrower or lessee for each of the Vehicles had already defaulted before the City took any action with respect to the Vehicles. Id.

6. The governing contracts for the Vehicles permitted AHFC, HVT, or HLT, as applicable, to repossess the Vehicles upon default. Id.

**New York Vehicle and Traffic Law Section 1224 and the DVO Policy**

7. Pursuant to Section 1224(1), a motor vehicle is "deemed to be an abandoned vehicle if left unattended . . . with no [license] plate[] affixed thereto, for more than six hours on any highway or other public place." Id.

8. Pursuant to Section 1224(2), "[i]f an abandoned vehicle, at the time of abandonment, ha[d] no [license] plate[] affixed and [wa]s of a wholesale value, taking into consideration the condition of the vehicle, of one-thousand two hundred fifty dollars or less, ownership [would] immediately vest in the local authority having jurisdiction thereof." Id. at 5.

9. New York City's Administrative Code assigns the City's Department of Sanitation ("DSNY") the responsibility for determining whether certain vehicles qualify as abandoned under Section 1224 and for removing those that do meet certain criteria. Id.

10. During the relevant time period, the DVO Policy set forth a series of criteria to determine whether a vehicle fell within the confines of Section 1224. Id.

11. First a DSNY officer inspecting a vehicle on the street would determine if the vehicle met the City's definition of a derelict vehicle by evaluating the vehicle using criteria on a DS-12; this form contained a list of factors including: whether the vehicle is "seriously burned," whether it is a "luxury vehicle," the vehicle's age, the availability of a VIN, and the number and nature of damaged components. Id. at 5-6.

12. Through this process, DSNY employees "reasonably approximate[d] the definition of wholesale value as set forth in Section 1224," rather than "place a dollar value on [the] derelict vehicle." Id. at 6.

13. If a vehicle meets the criteria set forth in the DS-12 form, then a DSNY employee would identify it as a derelict vehicle. Id.

14. Once a vehicle is removed from the City streets and deemed derelict, the City takes ownership of it. Id. at 7.

15. Once the City takes ownership of a vehicle, the City brings the vehicle back to a designated tow yard. Id.

16. During this overall vehicle review process, any interested persons with documentation identifying an ownership interest in a vehicle could lawfully remove it from a tow yard. Id.

17. Once the vehicle is transferred to a tow yard, a DSNY supervisor conducts a secondary review of the vehicle to ensure that it meets the DS-12 criteria, then classifying the vehicle as either a "hold" or "pass." Id.

18. A "pass" vehicle reflected a DSNY supervisor's conclusion that the vehicle satisfied the DS-12 criteria. In contrast, a vehicle that was designated "hold" did not satisfy the DS-12 criteria and would be placed on hold. Id.

19. Once a vehicle received a "pass" designation, a DSNY employee completed a MV-109 salvage form which transferred title of the vehicle to the City. Id. at 8.

**The Subject Vehicles**

20. The City determined that each of the Vehicles were found unattended on a New York City street without license plates for a period of six hours or more. Id. at 8.

21. Significant physical damage was observed on each vehicle. Id. at 9.

22. Specifically, the Beatty Vehicle had its driver airbag missing, three missing doors, a stripped engine, missing engine compartment parts, as well as a stripped interior and exterior.

See Deposition Transcript of Michelle Smith, dated March 6, 2025 ("Smith Dep. Trans.") at 133: 4-25.

23. When asked if Plaintiffs would have recovered the Beatty Vehicle, Ms. Smith stated that "[b]ased on the extensive damage, we most likely would not." Id. at 133:19-134:1.

24. Additionally, the Rodriguez Vehicle was missing the driver side airbag, all four doors were missing, there was extensive front damage, extensive left damage, a stripped engine, missing engine compartment parts and both the interior and exteriors were stripped. Id. at 126:17-127:8.

25. When asked if Plaintiffs would have recovered the Rodriguez Vehicle, Ms. Smith testified that "based on maybe the—the engine situation in this one, it might not be worth recovering….". Id. at 127:9-12.

26. Based on the described physical conditions of the Salgado and Cruz Vehicles, Ms. Smith further testified that Plaintiffs would likely have not recovered them. Id. 129:24-130:15; 138:20-140:22.

27. Plaintiff's own expert valued the Salgado Vehicle at $250. Opinion and Order at 49-50.

28. With regards to the Salgado Vehicle Section 1224(2) mandated that title of this vehicle be transferred to the City. Id.

29. The Court also found that the claims regarding the Cruz Vehicle were time-barred. Id. at 20.

30. The City paid Plaintiffs no compensation for the Vehicles. Id. at 10.

**DEFENDANT'S CONCLUSIONS OF LAW**

Plaintiffs fail to establish, by a preponderance of the evidence, that the wholesale values of the Beatty, Rodriguez, Jones, and Philbert vehicles each exceed $1,250 such that N.Y.

Vehicle and Traffic Law Section 1224(2) does not apply. As a result, there is no taking of those vehicles under the 5th Amendment and Plaintiffs are not entitled to just compensation. Moreover, Plaintiffs fail to establish that the Griffin, Khan, Smith, and Vasquez Vehicles, for which the Court has already found liability, are valued at more than $1,250 and, thus, any assessed damages and just compensation for those vehicles must be capped at $1,250 for each vehicle.

**A. Plaintiffs' Purported Expert Has Valued the Vehicles Incorrectly**

As an initial matter, Plaintiffs claim that the values for the four vehicles are as follows: (1) Beatty Vehicle-$1,903.33; (2) Rodriguez Vehicle-$2,389.00; (3) Jones Vehicle-$6,184.00; and (4) Philbert Vehicle-$5,329.44. See Opinion and Order at 10. However, the basis for these valuations are wholly incorrect.

First, Paul Fallati, Plaintiffs' purported "expert" incorrectly determined the individual valuations of each of the ten vehicles by researching the prices of the undamaged parts of each vehicle. Fallati explained that he "researched the value of these undamaged parts" and then "attach[ed] proof of the parts' values that [were] printed from eBay." See ECF 43-4. Fallati concluded that the "value of the 10 Subject Vehicles based upon their value for parts" was how he came to his ultimate valuations.

Fallati implements the wrong methodology for determining the value of the vehicles. Valuation, for purposes of Section 1224(2) is determined to be the wholesale value of a vehicle, not the value of the individual parts of a vehicle that could be sold for a premium. ("If an abandoned vehicle, at the time of abandonment, has no number plates affixed and is of **a wholesale value**, taking into consideration the condition of the vehicle, of [one thousand two hundred fifty dollars…") See Section 1224(2). As Fallati's entire valuation is premised on the wrong methodology, his report should be given little weight.

Second, not only did Fallati incorrectly determine value based on car parts rather than the wholesale value, he also determined the vehicle valuations based on the prices of car parts as they existed in 2025. This is highly problematic considering that the vehicles at issue in this action were removed by the City between 2019 and 2024. Indeed, the price of car parts in 2025 is not indicative of prices from six years prior in 2019.

**B. DSNY's Determination that a Vehicle's Wholesale Value was $1,250 or Less was Subject to Multiple Levels of Review**

The DVO Policy in effect at the time required multiple layers of DSNY employee review to ensure that the vehicles removed fit within the confines of the program. First, namely, that they were found without license plates, in a dilapidated condition, and abandoned for a certain amount of time. Based on DSNY's observations of the physical condition of each vehicle which included, for example, burned out car frames, broken windows, missing wheels, stripped and missing pieces of engines, it is clear that the wholesale value of each vehicle at the time of removal was under $1,250, and such assessments were appropriately made by DSNY employees. DSNY employees identified how each vehicle qualified as "derelict" according to the DS-12 form.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that judgment be entered in its favor on the 5th Amendment takings claim as to the Beatty, Rodriguez, Jones, and Philbert vehicles; that the just compensation amounts awarded based on the Court's finding of a taking of the Griffin, Khan, Smith, and Vasquez Vehicles be capped at $1,250 for each vehicle; that Plaintiffs solely be awarded nominal damages on their 14th Amendment claim, and for such other and further relief as this Court deems just and proper.

Dated: New York, New York
October 13, 2026

**STEVEN BANKS**
Corporation Counsel of the City of New York
*Attorney for Defendant*
100 Church Street, Room 5-169
New York, New York 10007
(212) 356-2183
sschonfe@law.nyc.gov
gzilkha@law.nyc.gov

By: /s/

Samantha Schonfeld
Genan Zilkha
*Assistant Corporation Counsels*

cc: All Counsel (via ECF and email)