UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMERICAN HONDA FINANCE CORPORATION and HVT, INC.,

Plaintiffs,

-against-

THE CITY OF NEW YORK,

Defendant.

Case No. 1:24-cv-01137 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

This case concerns the actions of The City of New York ("Defendant" or the "City") in connection with the permanent disposal of ten vehicles in which Plaintiffs American Honda Finance Corporation ("AHFC") and HVT, Inc. ("HVT" and, together with AHFC, "Plaintiffs") held property interests. Plaintiffs contend that the City could not permanently extinguish their interests without first giving them notice and an opportunity to contest its decision and without just compensation after the fact. The City responds that the vehicles were sufficiently damaged to fall within New York's abandoned vehicle statute, which mandates transfer of ownership to the local governmental authority, and that Plaintiffs have not otherwise established the vehicles' value.

The Court resolved most questions of liability on summary judgment. It held that the City denied Plaintiffs procedural due process as to nine vehicles; that its treatment of four vehicles in which AHFC held liens constituted takings; and that the remaining takings claims turn on the wholesale value of four leased vehicles. *See Am. Honda Fin. Corp. v. City of New York*, No. 24-cv-01137 (JLR), 2026 WL 2906002, at *16, *24 (S.D.N.Y. Sept. 28, 2026). The Court held a subsequent bench trial at which the sole question before the Court was one of value for purposes of liability and damages: in other words, whether Plaintiffs could establish the

amount of their loss and, for four vehicles, the factual predicate necessary to attribute the alleged takings to the City.

The parties submitted their proposed findings of fact and conclusions of law on October 14, 2026. Dkts. 77-78. The Court held a bench trial from October 20 through October 21, 2026, during which it received live testimony from three witnesses, deposition designations for one witness, and ten exhibits. The three live witnesses were Paul Fallati, Plaintiffs' valuation expert; Jean-Marc Henriquez, the District Relations Manager for AHFC; and Kerry Scully, the City's corporate designee. *See* Dkt. 84. The City also submitted deposition designations for Michelle Smith, Plaintiffs' corporate designee. *See* Dkt. 80 at 14. After considering that record and assessing the credibility of the witnesses, the Court finds that Plaintiffs have met their burden to prove the wholesale value of the eight vehicles at issue, thereby establishing: (i) that the City effected takings of the four leased vehicles, each with a wholesale value above $1,250, and (ii) the compensation due for all eight takings, including the four for which the Court established liability at summary judgment. Accordingly, the Court finds for Plaintiffs on the four unresolved Fifth Amendment claims and awards just compensation in the amount of $26,154.04 for the takings of Plaintiffs' eight vehicles. For the established Fourteenth Amendment violations, Plaintiffs only seek, and the Court awards, nominal damages of $1 to each Plaintiff, for a total of $2. Prejudgment interest shall be awarded in the amount of $3,719.99, and post judgment interest shall be awarded pursuant to 28 U.S.C. § 1961.

**BACKGROUND**[1]

The Court assumes the parties' familiarity with the facts and procedural history of this case, *see Am. Honda Fin. Corp.*, 2026 WL 2906002, at *2-6, to which the Court refers only as necessary to explain its findings of fact and conclusions of law.

Plaintiffs filed this action on February 16, 2024, asserting claims under 42 U.S.C. § 1983 ("Section 1983") for violations of the Fourth, Fifth, and Fourteenth Amendments, along with corresponding claims under the New York State Constitution. *See generally* Dkt. 1 ("Compl."). Their claims concern ten vehicles: a 2016 Honda Pilot (the "Cruz Vehicle"); a 2018 Honda Civic (the "Griffin Vehicle"); a 2015 Honda Accord (the "Khan Vehicle"); a 2016 Honda Accord (the "Smith Vehicle"); a 2017 Honda Accord (the "Vasquez Vehicle"); a 2020 Honda CR-V (the "Beatty Vehicle"); a 2020 Honda Accord (the "Jones Vehicle"); a 2021 Honda Accord (the "Philbert Vehicle"); a 2021 Honda Civic (the "Rodriguez Vehicle"); and a 2022 Acura MDX (the "Salgado Vehicle") (each, a "Vehicle"). *Id.* ¶¶ 8-9. Each Vehicle was removed from the street in accordance with the Derelict Vehicle Operations Policy, *see* PX-35 ("DVO Policy"), which the City's Department of Sanitation ("DSNY") uses to identify vehicles for removal and disposal pursuant to New York Vehicle and Traffic Law § 1224 ("Section 1224"). Prior to the Vehicles' removal, AHFC held perfected liens on the Griffin, Smith, Khan, and Vasquez Vehicles (the "Lien Vehicles"), PX-40 ("Stip.") ¶ (a); HVT held title to the Beatty, Salgado, Jones, and Rodriguez Vehicles, *id.* ¶ (b); and Honda Lease Trust held title to the Philbert Vehicle, *id.* During the period in which the Vehicles were removed, Section 1224(2) mandated the transfer of ownership to the local governmental authority, here the City, for any qualifying

[1] Citations to "PX" refer to Plaintiffs' exhibits; "DX" to Defendant's exhibits; "Tr." to the October 21, 2026 trial transcript; and "Dep." to deposition designations of the person indicated.

vehicle with a wholesale value of $1,250 or less. *See* N.Y. Veh. & Traf. Law ("VTL") § 1224(2) (McKinney 2002).

Following discovery, Plaintiffs moved for summary judgment on all claims, and the City cross-moved for partial summary judgment on the Fourth and Fifth Amendment claims. *See* Dkts. 43, 53. On September 28, 2026, the Court granted both motions in part. *See Am. Honda Fin. Corp.*, 2026 WL 2906002, at *26. It first held that all claims concerning the Cruz Vehicle were time-barred. *Id.* at *10-12. The Court then granted Plaintiffs summary judgment on the Fourteenth Amendment procedural due process claim concerning each of the remaining nine Vehicles, *id.* at *16, and acknowledged their entitlement to nominal damages for those violations, *id.* at *25.

The Court reached a different result on the other constitutional claims. It granted the City summary judgment on Plaintiffs' Fourth Amendment claim because the challenged acts followed concededly lawful initial seizures and did not constitute independently actionable conduct under controlling law. *Id.* at *17-19. On the Fifth Amendment claim, it held that the City's extinguishment of AHFC's liens in the Lien Vehicles constituted takings regardless of whether those vehicles had a wholesale value of more than $1,250 and granted Plaintiffs summary judgment on liability as to those Vehicles. *Id.* at *23-24. Conversely, the Court granted the City summary judgment as to the Salgado Vehicle, to which HVT held title, because Plaintiffs' expert valued the vehicle at $250, making it indisputably subject to Section 1224(2)'s ownership transfer mandate. *Id.* at *23.

That left the takings claims concerning the Beatty, Jones, Philbert, and Rodriguez Vehicles (the "Title Vehicles"). For those Vehicles, the Court held that Section 1224(2) would vest ownership in the City if each Title Vehicle's wholesale value, taking account of its condition, was $1,250 or less. *Id.* at *22-23. Because the parties disputed those values, the

Court did not grant either side summary judgment with respect to the Title Vehicles. *Id.* at *23. The Court also dismissed the state constitutional claims and denied declaratory and injunctive relief. *Id.* at *24-26.

Accordingly, the trial focused on valuation of the Griffin, Khan, Smith, Vasquez, Beatty, Jones, Philbert, and Rodriguez Vehicles (collectively, the "Vehicles"), the dependent Fifth Amendment claims concerning the Title Vehicles, and the appropriate monetary relief.

* * *

Pursuant to Federal Rule of Civil Procedure ("Rule") 52(a), the Court makes the following findings of fact and conclusions of law. Where a finding also bears on a legal conclusion, the Court discusses it in the section in which it is most useful.

## FINDINGS OF FACT

### I. The Valuation Evidence

The parties' valuation dispute concerns the wholesale value of the Vehicles at the time of their removal. That is because Section 1224(2) turns on "wholesale value, taking into consideration the condition of the vehicle," and sets a threshold of $1,250. VTL § 1224(2). The City used the DVO Policy's damage criteria to approximate that threshold rather than assigning a specific dollar value to each Vehicle. *See* DVO Policy at CNY0066 ("DSNY will not place a dollar value on a derelict vehicle. The criteria set forth in Appendix 1 was established to accommodate and reasonably approximate the definition of wholesale value as set forth in Section 1224[.]" (parentheses omitted)); Tr. at 107:15-108:12. As DSNY supervisor Kerry Scully ("Scully") explained, employees in the field inspect a vehicle, record damage in specified categories, and determine whether the vehicle meets the DVO Policy's criteria for removal as derelict. Tr. at 109:5-25, 113:9-21; *see also id.* at 104:15-18. To qualify as derelict for purposes

of removal and destruction, a vehicle must have sustained between one and four categories of damage or loss, depending on the vehicle's make and age. Those categories include:

> 1. Any vehicle that has been seriously burned.
> 2. Nose missing, which shall require that at least 3 of the 4 parts are missing: hood, grill, front bumper, one (1) front fender.
> 3. Door(s) **AND** hood missing or damaged.
> 4. Front end damage.
> 5. Rear end damage.
> 6. Any interior damage **AND** glass damage.
> 7. Door(s) **AND** trunk lid missing or damaged.
> 8. Engine or transmission missing.
> 9. Damage to right or left side.
> 10. Fire damage, other than seriously burned.
> 11. Any vehicle eight (8) years or older that is deteriorated, or dilapidated. (Requires valid VIN)

DVO Policy at CNY0078.

Following the initial review and determination that the DVO Policy's criteria are met, a vehicle is removed from the street and taken to a tow yard by one of the City's contractors. Tr. at 113:22-114:11. More specifically, a DSNY field officer first documents the vehicle's condition on a DS-463 form, using the damage categories identified in the DVO Policy. Tr. at 110:1-8, 112:4-14; *see, e.g.*, Dkt. 54-1 at CNY0034, CNY0058. After the vehicle is delivered to a tow yard, two additional DSNY employees review the vehicle's condition to verify that it comports with the DVO Policy's criteria for approximating the wholesale value threshold before authorizing its disposal, again without determining its specific dollar value. Tr. at 114:13-115:17. The two DSNY employees summarize any damage using internal abbreviations on a DS-464 form. *Id.* at 111:19-22; *see, e.g.*, PX-28 at 3-4. Finally, an "insurance letter" provides a more detailed description of the damage recorded on both forms. Tr. at 112:15-17; *see, e.g.*, PX-28 at 2. The parties, and Plaintiffs' expert, generally relied on these insurance letters, which the Court will refer to as "condition checklists."

Plaintiffs contend that the City's approach understates the value of the Vehicles in light of the value of their surviving parts. They rely principally on the April 28, 2025 report of Paul Fallati ("Fallati"), who valued the Vehicles at a total of $29,437.44. *See* PX-24 ("Fallati Rep.") at 3. His individual Vehicle estimates range from $1,586.41 for the Khan Vehicle to $6,184.20 for the Jones Vehicle. *Id.* On his account, the wholesale value of each Vehicle exceeded $1,250 despite the damage that prompted the City's removal and subsequent destruction of the Vehicles.

Fallati has more than forty years of experience in the automotive industry, including buying vehicles at auction, repairing damaged vehicles, and sourcing and selling used parts. Tr. at 12:23-15:9. The City did not move to exclude Fallati's testimony under Federal Rule of Evidence 702 or *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Moreover, although the City conducted a *voir dire* concerning his expertise and approach, *see* Tr. at 21:1-37:10, it expressly declined to object to Fallati's qualification as an expert in vehicle valuation, *see id.* at 37:14-16. The Court accepted him as qualified, without objection, based on his expertise and experience in the automotive industry. *See id.* at 37:17-19.

In preparing his report, Fallati reviewed the City's condition checklists pertaining to the Vehicles and identified components he considered usable based on the checklists. Scully, a representative of the City, confirmed that a checked box on the condition checklists on which Fallati relied meant that DSNY employees observed damage in the identified area, while an unchecked box meant that they did not observe that damage. *Id.* at 117:22-24; *see id.* at 118:22-119:5. Fallati then researched prices for the undamaged parts based on comparable used parts through eBay. Fallati Rep. at 2; Tr. at 18:3-20:21; 51:18-52:21. He selected what he described as "median" prices and added the values of the selected components to arrive at his individual valuations for those parts, the sum of which constituted his wholesale valuation of each Vehicle. Tr. at 52:5-21. Fallati's Vehicle valuations are as follows:

| Vehicle | Fallati Valuation |
|---|---|
| Philbert | $5,329.44 |
| Jones | $6,184.20 |
| Griffin | $3,926.99 |
| Rodriguez | $2,389.95 |
| Smith | $3,566.54 |
| Beatty | $1,903.33 |
| Khan | $1,586.41 |
| Vasquez | $4,550.58 |

Fallati Rep. at 3.

The City primarily takes issue with Fallati's approach of determining the wholesale value of the Vehicles based on a sum of the value of their parts. Tr. at 136:7-12. The Court has independently considered the reliability and helpfulness of his testimony and finds that his experience, review of the City's condition records, and research into comparable parts prices provide a sufficiently reliable basis to assist the Court in estimating value. *See* Fed. R. Evid. 702; *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 539 (S.D.N.Y. 2004) ("[Rule 702] incorporates principles established in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, in which the Supreme Court charged trial courts with a gatekeeping role to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" (footnote omitted) (quoting *Daubert*, 509 U.S. at 589)). The Court's findings will reflect the weight that it gives to Fallati's approach and his ultimate estimates.

## II. The Part Prices

Before examining how much weight to afford Fallati's approach of determining the wholesale value of the Vehicles based on the sum of their parts' prices, the Court first considers whether Fallati adequately supported the prices he assigned to those parts. The Court finds that Fallati's approach supplies a reasonable basis for estimating the value of the selected operable parts. He consulted eBay and "dismantlers' sites," compared multiple listings, and selected what he described as median prices. Tr. at 51:18-52:16, 87:7-10. Although he could not confirm that

every attached example part sold for its advertised price, *see, e.g.*, *id.* at 84:1-12, he reviewed recently sold listings as part of his evaluation of the median price, *id.* at 87:16-21. The Court credits that broader research and his experience purchasing vehicle parts. Moreover, because the City's destruction of the Vehicles prevented a later inspection by Plaintiffs to confirm the exact condition and viability of Fallati's selected parts, the Court credits Fallati's assessment rather than presuming additional damage that the condition checklists do not support.

The fact that Fallati collected the listings in 2025 — that is, one to four years after the Vehicles were removed, *see* Stip. ¶ (c) — does not undermine the reasonableness of the estimates. When the Court asked whether "used parts['] prices have increased over the past two years," Fallati answered, "[n]ot across the board," and explained that scarcity, demand, and the age of the vehicle could move prices in either direction. Tr. at 89:9-90:22; *see, e.g.*, *id.* at 90:12-13 ("[S]ometimes actually in a used car, [the value of a part] diminish[es] over time because there's less use for it."). The trial evidence does not establish a uniform increase, identify an adjustment for any particular part, or quantify any historical price difference. Nor does the City offer any competing pricing for the selected parts or contest Fallati's specific part value estimates.

Thus, considering Fallati's testimony together with his experience, the Court accepts the selected prices as reasonable estimates of the selected parts' values at the time the Vehicles were removed, subject to the specific corrections and wholesale allowance discussed below.

## III. Corrections to the Individual Vehicle Estimates

Fallati testified that his valuation approach was conservative. This is in part because he excluded all of the parts in a given area when the City's condition checklist marked "left side," "right side," "front end," or "rear end" damage and, more broadly, avoided parts that might have suffered damage under the City's descriptions. Fallati Rep. at 6, 14, 21, 33, 44, 60, 73, 80; *see*

Tr. at 48:10-18, 57:15-58:25. But Fallati did not consistently apply the assumptions that he described. Specifically, Fallati was inconsistent in his treatment of components within damaged areas and glass in Vehicles with a general "glass broken" notation. Fallati Rep. at 6, 14, 33, 41, 44, 60, 73 (capitalization omitted); *see* Tr. at 57:15-58:25 (outlining Fallati's approach). Other unsupported or inconsistent entries require further adjustments to Fallati's valuations, which the Court discusses below. After making the appropriate adjustments to his valuation of the parts, the Court considers whether the resulting estimates reasonably approximate the wholesale value of each Vehicle.

**A. The Philbert Vehicle**

Fallati valued the Philbert Vehicle at $5,329.44, principally based on the value of its engine, transmission, cooling components, radiator core support, and electronic control module. *See* Fallati Rep. at 5; Tr. at 63:5-19. The City recorded in the Philbert Vehicle's condition checklist exterior burning and missing engine-compartment parts, among other things, but it did not mark the separate categories for a burned engine, a burned engine compartment, a missing engine, or a missing transmission. Fallati Rep. at 6. Those distinctions, as well as the City's destruction of the Philbert Vehicle, support Fallati's inference that the major assemblies remained.

There is, however, no support in the record for Fallati's $299.99 radiator core support valuation. Though the valuation table for the Philbert Vehicle identifies Attachment 3 as corroborating that estimate, the Philbert Vehicle section of the report contains no such attachment. Fallati Rep. at 5-11. At trial, Fallati identified the core support as being among the components he valued, Tr. at 63:13-19, but he did not separately explain that price. Because the record before this Court does not permit verification of that amount, the Court omits the $299.99

entry from the valuation table. That correction reduces the Philbert Vehicle's valuation to **$5,029.45**. The Court otherwise credits the valuation of the selected components.

### B. The Jones Vehicle

Fallati valued the Jones Vehicle at $6,184.20. The Jones Vehicle's valuation table includes two entries for rear-right knee suspension assemblies, each of which is valued at $350. Fallati Rep. at 59. The Fallati report's supporting attachments reproduce the same listing, with handwritten labels marking one "Left" and the other "Right." *Id.* at 63-64. But the City's condition checklist recorded "extensive right [side] damage" to the Jones Vehicle. *Id.* at 60 (capitalization omitted). In line with Fallati's valuation methodology, then, the Court excludes the $350 allowance for the right-side assembly because it falls within the damaged area.

The same problem affects the four wheels, which Fallati priced at $280.97 each. *Id.* at 59, 65-68. Applying his stated treatment of side damage, the Court excludes the two right-side wheels, a reduction of $561.94, and retains the two left-side wheels.

The Court additionally excludes the $650 sunroof assembly. *See id.* at 59. The City marked "glass broken" on the Jones Vehicle's condition checklist, *id.* at 60 (capitalization omitted), and Fallati testified that he assigned no value to any glass when the City recorded general glass damage, *see* Tr. at 57:24-58:14. Although the condition checklist does not separately identify roof damage, that omission does not explain Fallati's departure from the glass exclusion.

Together, the suspension, wheel, and sunroof corrections reduce the Jones Vehicle's valuation to **$4,622.26**. The Court otherwise credits Fallati's valuation of the selected components.

**C. The Griffin Vehicle**

Fallati valued the Griffin Vehicle at $3,926.99. Fallati Rep. at 43. The Griffin Vehicle's valuation table likewise includes four wheels totaling $316, *see id.*, despite the City's "right side damage" notation, *id.* at 44 (capitalization omitted). The Court deducts the value of the two right-side wheels, each $79, for the same reason that it removes those wheels from the Jones Vehicle estimate. The correction reduces the Griffin Vehicle's valuation to **$3,768.99**. The Court otherwise credits Fallati's valuation of the selected components.

**D. The Rodriguez Vehicle**

Fallati valued the Rodriguez Vehicle at $2,389.98. *Id.* at 20. The Rodriguez Vehicle's valuation table includes four wheels at $144.99 each, *id.* at 20, 27-30, even though the City recorded "extensive left [side] damage," "extensive right [side] damage," "extensive front damage," and "rear end damage," *id.* at 21 (capitalization omitted); *see id.* at 22. Consistent with the corrections for the Jones and Griffin Vehicles, as well as Fallati's stated exclusion of damaged areas, the Court omits all four wheels from the valuation, a deduction of $579.96. The absence of a "wheels missing" notation does not compel a different result, as presence and recoverable value present different questions.

The valuation table also uses a $143.54 dashboard wiring harness advertised for an Accord to value a harness in the Rodriguez Vehicle, which is a Honda Civic. *Id.* at 20, 25. Neither the report nor Fallati's trial testimony explains that cross-model comparison. Because Plaintiffs have failed to establish the basis for this comparison, the Court excludes this entry as well.

Finally, it bears note that the valuation table entries total $2,389.98, rather than the $2,389.95 valuation reflected in the Fallati report's summary table. *Id.* at 3, 20. Starting with the correctly added valuation table total and subtracting the wheels and harness yields a valuation

of **$1,666.48** for the Rodriguez Vehicle. The Court otherwise credits Fallati's valuation of the selected components.

### E. The Smith Vehicle

Fallati valued the Smith Vehicle at $3,566.54. *Id.* at 32. The Court excludes the $300 sunroof assembly from the total valuation because, as with the other Vehicles, the Smith Vehicle's condition checklist includes a "glass broken" notation. *Id.* at 33 (capitalization omitted); *see id.* at 32. The Court retains the separately priced sunroof motor, which the corroborating listing expressly excludes and which the glass damage notation does not identify as damaged. *Id.* at 32, 37-38. These findings yield a valuation of **$3,266.54** for the Smith Vehicle. The Court otherwise credits Fallati's valuation of the selected components.

### F. The Beatty Vehicle

Fallati valued the Beatty Vehicle at $1,903.33, including $240 for a sunroof glass window. *Id.* at 72. Because the City marked "glass broken" on the Beatty Vehicle's condition checklist, *id.* at 73, the Court excludes that entry for the reasons already stated. The Court otherwise credits Fallati's valuation of the selected components, yielding a valuation of **$1,663.33**.

### G. The Khan and Vasquez Vehicles

Fallati valued the Khan Vehicle at **$1,586.41** and the Vasquez Vehicle at **$4,550.58**. *Id.* at 12, 79. The selected components and supporting materials for these Vehicles reveal no apparent departures from his stated methodology. The Court therefore credits both estimates without further correction.

## IV. Accounting for Wholesale Costs

All this being said, the Court credits the City's position that the wholesale value of a *vehicle*, which is the metric Section 1224 compels, *see* VTL § 1224(2), is not merely the sum of

its component parts. Rather, the wholesale value of the Vehicles must account for the costs of dismantling and selling their recoverable parts. The retail prices of those parts therefore do not, by themselves, establish what a wholesale buyer would pay for the whole vehicle. Fallati himself acknowledged that distinction: he testified that a wholesale buyer would pay "somewhat less" than the sum of the vehicle's parts in order to account for labor and marketing costs. Tr. at 80:5-14. Neither party presented an estimate of the value of those additional labor and marketing costs. Nor was any evidence presented, expert or otherwise, of wholesale prices of vehicles with damage comparable to that outlined in the City's condition checklists.

On the record before it, including the very limited cross-examination of Fallati, the Court finds that Fallati's estimates (with the aforementioned corrections for departures from his stated methodology) reasonably approximate the wholesale value of the Vehicles because his conservative prices and omission of additional saleable components adequately offset potential labor and marketing costs. The intended disposition of the Vehicles, which were abandoned and in disrepair, supports consideration of the value of their parts. The City's representative, Scully, explained that the City's contractors dismantle derelict vehicles for parts and scrap what remains. *Id.* at 116:16-117:1. And the condition checklists for the Vehicles confirm that each was disposed of by "crush[ing] or dismantl[ing], for parts only." *See, e.g.*, Fallati Rep. at 6, 14, 21, 33, 44, 60, 73, 80. Fallati selected median part prices, excluded broad categories of potentially damaged parts, and omitted other saleable parts altogether. *See* Tr. at 51:18-52:21, 57:15-62:16, 87:7-24. For example, he specifically identified omitted wheels, a hood, wiper components, and a wiring harness for the Philbert Vehicle, and omitted wheels and front-end components for the Khan Vehicle. *See id.* at 63:23-65:14, 71:8-72:24. That testimony supports an allowance for additional recoverable value, even though the record does not permit the Court to assign each omitted part a specific price.

Importantly, the Court here evaluates the adequacy of that discount in light of the City's destruction of the Vehicles. As explained more fully in the Conclusions of Law, when that destruction prevents a precise determination of damages within a range that the evidence reasonably supports, the City bears the resulting uncertainty. That principle does not relieve Plaintiffs of their burden to establish a reasonable valuation. But it does preclude reducing an otherwise supported estimate merely because the City's destruction prevents greater precision.

The City's application of the DVO Policy does not support an alternative estimate on the present record. Although the DVO Policy does not require employees to assign a specific dollar amount to the value of the vehicle, the City treats compliance with its criteria as an assessment that each Vehicle had a wholesale value of $1,250 or less. *See id.* at 134:16-17, 134:24-135:6. But, while Scully testified that the DVO Policy's criteria were intended to approximate wholesale value, she did not explain *how* particular combinations of damage correspond to that threshold — despite being given the opportunity to do so. *See id.* at 108:1-12, 119:18-120:3; *see also id.* at 108:10-12 ("Q. Are you able to say whether a vehicle has a wholesale value above or below $1,250? A. No."). There is no evidence before this Court that supports the City's contention that a vehicle having sustained a set minimum number of damage categories, *see* DVO Policy at CNY0078, translates to a wholesale value for that vehicle of $1,250 or less. Indeed, when Scully was pressed about *how* the condition checklist and the designation of a vehicle as derelict represents a "reasonable approximation of the vehicle's value," she responded only that the City does not "put a dollar value on a[ny] vehicle, but based off of [its] policy and procedure, [DSNY officers] have to check off specific boxes" and "make sure that the boxes are checked off to fit [the City's] policy and procedure." *Id.* at 119:18-120:1. When asked how those boxes are "related to the vehicle's value," she simply stated that "[i]t's damage to the vehicle." *Id.* at 120:2-3. Her observation that the condition checklists document "damage to the

vehicle" does not explain how the recorded damage translates into an estimate of a vehicle's wholesale value. The Court is not placing the burden of proof on the City, but that missing connection limits the weight the Court gives the City's process as a basis for rejecting Plaintiffs' adjusted estimates.

The Court accordingly credits Fallati's assessment that his estimates of the wholesale value of the Vehicles remain reasonable even after accounting for labor and marketing costs — subject to the Court's corrections above, *see supra* Findings of Fact, Sections III.A-F. The City's evidence does not persuade the Court that an additional discount is necessary, and the City's destruction forecloses a more complete inventory of the remaining parts.

## V. Plaintiffs' Recovery Decisions Do Not Establish the Vehicles' Value

Finally, Fallati's valuations are not, as the City argues, contradicted by testimony from Plaintiffs' corporate designee, Michelle Smith ("Smith"). *See* Tr. at 101:12-102:14; Dkt. 77. The Court gives little weight to Smith's testimony about whether Plaintiffs would have recovered the Beatty and Rodriguez Vehicles as evidence that Fallati overstated the value of those Vehicles. Smith explained that recovery decisions involve a cost-benefit analysis that considers both a vehicle's estimated value and the towing, storage, and other fees necessary to retrieve it. *See* Smith Dep. at 27:20-28:1. She illustrated that distinction with a hypothetical vehicle worth $10,000 that Plaintiffs would decline to recover because storage fees totaled $12,000. *Id.* at 118:20-119:1. Her Vehicle-specific answers likewise addressed whether recovery would make economic sense, rather than assigning any Vehicle a dollar value. For the Rodriguez Vehicle, Smith stated that recovery "might not be worth" pursuing but that Plaintiffs "would have to do an evaluation" to be certain, *id.* at 127:5-16; for the Beatty Vehicle, she stated that Plaintiffs "most likely would not" pursue recovery given the "extensive damage" described, *id.* at 133:19-134:1. Those assessments do not undermine Plaintiffs' adjusted valuations of

$1,666.48 and $1,663.33 for the Rodriguez and Beatty Vehicles, respectively. Recovery costs could make retrieving Vehicles of that value uneconomic, but those costs do not speak to the separate issue of the Vehicles' wholesale value. Simply put, the City's designated testimony from Smith supplies neither a competing valuation nor a basis for concluding that Plaintiffs' estimates overstate the Vehicles' value. *See* Tr. at 95:15-17 (direct examination of Jean-Marc Henriquez: "Q. Is the decision whether to pick up a vehicle the same thing as the decision about what the vehicle's value is? A. No, that's [a] separate issue[].").

## VI. Summary of the Wholesale Value of the Vehicles

In sum, the City's corporate designee confirmed the premise of Fallati's methodology: checked boxes identify observed damage, while unchecked boxes identify areas where the City recorded no damage. *Id.* at 118:22-119:5. The City offered no challenge to Fallati's proffered part prices. Its principal remaining criticism — that wholesale value must account for the costs of dismantling and selling the parts — identifies a necessary consideration, but does not establish that Fallati's estimates fail to account for it. Fallati described a Vehicle's wholesale value as being "somewhat less" than the sum of its parts, *id.* at 80:5-14, characterized his estimates as conservative, *id.* at 62:2-16, and testified that labor costs would not change his valuations, *id.* at 85:21-86:2. Plaintiffs rely on the conservative nature of Fallati's approach to explain why his estimates of part prices reasonably approximate the wholesale value of the Vehicles. *Id.* at 130:16-22. After correcting the identified inconsistencies in the application of that approach, the Court credits that explanation based on Fallati's experience, his conservative part prices, and his omission of additional saleable parts. The City's criticisms do not persuade the Court otherwise. The Court adopts the corrected estimates as the Vehicles' wholesale values without a further general deduction, for which there is no support in the record. The following table reflects the resulting wholesale value of the Vehicles:

| Vehicle | Wholesale Value |
|---|---|
| Philbert | $5,029.45 |
| Jones | $4,622.26 |
| Griffin | $3,768.99 |
| Rodriguez | $1,666.48 |
| Smith | $3,266.54 |
| Beatty | $1,663.33 |
| Khan | $1,586.41 |
| Vasquez | $4,550.58 |

## CONCLUSIONS OF LAW

### I. Proof of Value and the Remaining Takings Claims

Plaintiffs have "the burden of persuasion regarding the essential aspects of their claims." *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 57 (2005). Here, "Plaintiffs must prove every element of a Section 1983 claim by a preponderance of the evidence, 'including those elements relating to damages.'" *Wallace v. Suffolk Cnty. Police Dep't*, 809 F. Supp. 2d 73, 80 (E.D.N.Y. 2011) (quoting *Miner v. City of Glens Falls*, 999 F.2d 655, 660 (2d Cir. 1993)); *see Gibeau v. Nellis*, 18 F.3d 107, 110 (2d Cir. 1994) ("To recover compensatory damages under Section 1983, a plaintiff must prove that his injuries were proximately caused by the constitutional violation."); *accord Est. of Mauricio Jaquez v. Flores*, No. 10-cv-02881 (KBF), 2016 WL 1084145, at *5 (S.D.N.Y. Mar. 17, 2016).

With respect to the four unresolved takings claims, Plaintiffs must establish that the wholesale value of the Title Vehicles exceeded the statutory threshold of $1,250. *See Am. Honda Fin. Corp.*, 2026 WL 2906002, at *24 ("[F]or any of those Vehicles whose wholesale value exceeded $1,250 at the relevant time, Section 1224(2) did not vest ownership in the City, and the City's subsequent extinguishment and permanent disposition of Plaintiffs' property interest effected a taking[.]"). For each Vehicle as to which Plaintiffs have established liability, they must also "present evidence that provides the finder of fact with a *reasonable basis* upon which to calculate the amount of damages." *Sir Speedy, Inc. v. L & P Graphics, Inc.*, 957 F.2d

1033, 1038 (2d Cir. 1992) (emphasis added). "[T]he defendant . . . bears the risk of uncertainty as to th[at] amount[.]" *Anderson Grp., LLC v. City of Saratoga Springs*, 805 F.3d 34, 53 (2d Cir. 2015); *see id.* at 52-53 (clarifying that while proof that injury occurred must be established with certainty, the amount of damages need only be proven with reasonable precision); *see also Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 562 (1931) ("The rule which precludes the recovery of uncertain damages applies to such as are not the certain result of the wrong, not to those damages which are definitely attributable to the wrong and only uncertain in respect of their amount."). This risk allocation carries particular force where, as here, the defendant destroyed the property whose value the plaintiff must establish. As the Supreme Court has explained, "the wrongdoer shall bear the risk of the uncertainty which his own wrong has created." *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 265 (1946).

In accordance with that principle, Plaintiffs may recover the upper damages limit when Defendant's conduct prevents the factfinder from determining a more exact amount within a supported damages range. *See Raishevich v. Foster*, 247 F.3d 337, 343 (2d Cir. 2001) ("When 'damages are at some unascertainable amount below an upper limit and when the uncertainty arises from the defendant's wrong, the upper limit will be taken as the proper amount.'" (quoting *Gratz v. Claughton*, 187 F.2d 46, 51-52 (2d Cir. 1951))); *accord Grace v. Corbis-Sygma*, 487 F.3d 113, 119 (2d Cir. 2007); *see also Bigelow*, 327 U.S. at 264 ("[W]here the defendant by his own wrong has prevented a more precise computation, . . . the jury may make a just and reasonable estimate of the damage based on relevant data, and render its verdict accordingly."). That said, the plaintiff must nevertheless supply a reasonable evidentiary basis for that recovery. *See Corbis-Sygma*, 487 F.3d at 119 ("Despite the flexibility to be accorded in proving damages [where the uncertainty arises from the defendant's wrong], [the Second Circuit] ha[s] observed that the factfinder may not base its award on speculation or guesswork." (citation modified)).

The Court's findings are consistent with that standard. "As the finder of fact in a bench trial, the Court is entitled to make credibility findings about the witnesses and testimony and to draw reasonable inferences from the evidence presented in reaching its factual findings." *Rafter v. Everlast Sign & Serv. Inc.*, No. 21-cv-04588 (NRM) (LGD), 2025 WL 2240446, at *3 (E.D.N.Y. Aug. 6, 2025) (quoting *Williams v. Bethel Springvale Nursing Home, Inc.*, No. 14-cv-09383 (NSR), 2018 WL 3344217, at *1 (S.D.N.Y. July 9, 2018)). Here, the City destroyed the Vehicles before Plaintiffs could inspect them and left condition records that identify categories of damage without documenting the condition of every recoverable part. The Court has accounted for that uncertainty by crediting reasonable inferences supported by the City's records and Fallati's experience, rather than presuming additional damage that those records do not identify. The City's records and Fallati's experience support the existence and approximate value of the Vehicles' recoverable parts, as outlined in Fallati's report.

The Court has also examined whether Fallati's estimates reasonably measure the wholesale value of the Vehicles. Plaintiffs rely on Fallati's use of median prices and omission of additional parts to offset the costs of dismantling and selling those parts. The corrections above apply his stated assumptions consistently and remove entries that lack adequate support. *See supra* Findings of Fact, Sections III.A-F. After making those corrections, the Court finds, based on the record before it, that the estimates remain conservative and adequately reflect the Vehicles' wholesale value. *See, e.g.*, *Perry v. City of New York*, 78 F.4th 502, 528 (2d Cir. 2023) ("The [factfinder] could reasonably conclude that plaintiffs' damages calculation, given its various limitations, was indeed the 'most accurate basis possible under the circumstances' (and certainly that it 'showed the amount and extent of that work as a matter of just and reasonable inference')." (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946)).

Accordingly, the Court concludes that, for the reasons stated in the Findings of Fact, Plaintiffs have proven, by a preponderance of the evidence, that each of the Title Vehicles had a wholesale value exceeding $1,250. Section 1224(2), which mandates the transfer of ownership only when the statutory conditions — including wholesale value of $1,250 or less — are met, did not compel transfer of ownership of those Vehicles to the City. *See Am. Honda Fin. Corp.*, 2026 WL 2906002, at *22-23. That finding in turn resolves the remaining municipal liability question under the framework that the Court established at summary judgment. Because, pursuant to the Court's factual findings, Section 1224(2) did not mandate the transfer of ownership, the City "made a meaningful and conscious choice" to dispose of the Title Vehicles, thereby subjecting the City to liability under Section 1983. *Vives v. City of New York*, 524 F.3d 346, 351 (2d Cir. 2008); *accord Juzumas v. Nassau Cnty.*, 33 F.4th 681, 688 (2d Cir. 2022). Having proved the outstanding factual predicate for the City's liability, Plaintiffs are entitled to judgment on their Fifth Amendment claims concerning the Title Vehicles.[2]

## II. Just Compensation

The Fifth Amendment requires "just compensation" when the government takes private property for public use. U.S. Const. amend. V. The Court already found at summary judgment that the City effected takings of the Lien Vehicles. *See Am. Honda Fin. Corp.*, 2026 WL 2906002, at *23-24. The findings above establish takings of the Title Vehicles and provide a reasonable basis for valuing all eight Vehicles.

[2] At the close of Plaintiffs' case, the City moved for "judgment as a matter of law" on the unresolved Fifth Amendment claims. Tr. at 124:4-11. Rule 50(a)(1) governs judgment as a matter of law in a jury trial. Fed. R. Civ. P. 50(a)(1). Because the Court tried this action without a jury, it construes the City's motion as one for judgment on partial findings under Rule 52(c), on which the Court reserved decision, *see* Tr. at 124:12. The findings and conclusions above reflect that Plaintiffs met their burden to establish the City's liability as to the remaining Fifth Amendment claims. The City's motion is denied on that basis.

The resultant compensatory damages award measures Plaintiffs' interests in the wholesale value of each Vehicle. Totaling the values in the table above, *see supra* Findings of Fact, Part VI, the Court awards just compensation of $26,154.04.

**III. Prejudgment Interest**

Although Section 1983 does not explicitly provide for prejudgment interest, "in a suit to enforce a federal right, the question of whether or not to award prejudgment interest is ordinarily left to the discretion of the district court." *H.C. v. N.Y.C. Dep't of Educ.*, 71 F.4th 120, 128 (2d Cir. 2023) (alteration adopted) (quoting *Gierlinger v. Gleason*, 160 F.3d 858, 873 (2d Cir. 1998)). In exercising this discretion, courts typically consider: "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." *Gierlinger*, 160 F.3d at 873. "The purpose of the remedial scheme provided by [Section] 1983 is to fully compensate individuals for harm suffered as a result of a constitutional violation," and "[p]rejudgment interest is usually a necessary component of any award intended to make a plaintiff whole." *Rao v. N.Y.C. Health & Hosps. Corp.*, 882 F. Supp. 321, 326 (S.D.N.Y. 1995); *accord Gem Fin. Serv., Inc. v. City of New York*, No. 13-cv-01686 (RPK) (RER), 2023 WL 5831129, at *2 (E.D.N.Y. Sept. 8, 2023). Considerations of fairness and the relative equities also weigh in favor of granting prejudgment interest. The City "incurred an obligation to make [Plaintiffs] whole the instant that the injury occurred, so [Plaintiffs] should not be penalized for the fact that [they] had to wait until after litigation has run its course before realizing a judgment." *Santander Consumer USA, Inc. v. City of Yonkers*, No. 22-cv-08870 (KMK), 2025 WL 2673773, at *2 (S.D.N.Y. Sept. 18, 2025) (citation modified) (awarding interest on compensation for a vehicle taking). In light of these factors, the Court finds that Plaintiffs are entitled to prejudgment interest.

Such interest shall be calculated from each Vehicle's stipulated removal date. *See* Stip. ¶ (c). The Court adopts Plaintiffs' proposed simple-interest method and annual rates: 0.10% for 2021, 2.79% for 2022, 5.08% for 2023, 4.69% for 2024, 3.91% for 2025, and 3.83% for the relevant portion of 2026. *See* Dkt. 78 ¶ 69 n.3. It further finds that these annual rates, which comprise each year's average one-year Treasury bill rate, reasonably measure the cost of any delay in compensation to Plaintiffs without being "unduly burdensome and punitive to Defendant[]," *Stanbro v. Palou*, Nos. 20-cv-01591 (KMK), 19-cv-10857 (KMK), 2023 WL 2058610, at *2 (S.D.N.Y. Feb. 16, 2023) (finding that plaintiff is not entitled to prejudgment interest where it would result in overcompensation). The City does not oppose the grant of prejudgment interest or propose any alternative computation.

The Court prorates by calendar year from the day after each applicable removal date through October 30, 2026, inclusive, using 365 days per year except for 366 days in 2024, a leap year. It does not compound the interest. The table below applies that method to the corrected wholesale value of each Vehicle and rounds each Vehicle's total interest to the nearest cent.

| Vehicle | Removal Date | Wholesale Value | Prejudgment Interest |
|---|---|---|---|
| Khan | June 8, 2021 | $1,586.41 | $312.62 |
| Beatty | June 17, 2022 | $1,663.33 | $305.47 |
| Rodriguez | September 19, 2022 | $1,666.48 | $294.08 |
| Smith | May 10, 2023 | $3,266.54 | $491.62 |
| Vasquez | May 10, 2023 | $4,550.58 | $684.87 |
| Jones | August 22, 2023 | $4,622.26 | $628.75 |
| Philbert | January 24, 2024 | $5,029.45 | $576.97 |
| Griffin | February 7, 2024 | $3,768.99 | $425.61 |

Totaling those values yields a prejudgment interest award of $3,719.99. The Court applies interest only to the compensation for the takings, not to the nominal due process award addressed below.

## IV. Nominal Damages

The Court's summary judgment decision acknowledged Plaintiffs' entitlement to nominal damages for the Fourteenth Amendment violations. *See Am. Honda Fin. Corp.*, 2026 WL 2906002, at *16, *25. Plaintiffs seek no additional compensation for that claim. The Court therefore awards $1 to AHFC and $1 to HVT, for a total nominal award of $2. This award recognizes that each Plaintiff suffered a violation of its due process rights as a result of the City's actions.

## V. Post Judgment Interest

Pursuant to 28 U.S.C. § 1961(a)-(b), post judgment interest will accrue on the total monetary judgment at the statutory rate applicable on the date of entry, "computed daily" and "compounded annually." 28 U.S.C. § 1961(b); *see id.* § 1961(a).

## CONCLUSION

For the foregoing reasons, the Court finds for Plaintiffs on the Fifth Amendment claims concerning the Beatty, Jones, Philbert, and Rodriguez Vehicles and awards just compensation for those takings as well as the previously established takings of AHFC's liens in the Griffin, Khan, Smith, and Vasquez Vehicles. The Court awards $26,154.04 in just compensation on the Fifth Amendment claims, plus $3,719.99 in prejudgment interest. The Court also awards $1 to each Plaintiff on the Fourteenth Amendment claim, for $2 in nominal damages. The total judgment is $29,876.03. Post judgment interest is awarded on that sum pursuant to 28 U.S.C. § 1961.

The Clerk of Court shall enter judgment consistent with this opinion and the September 28, 2026 Opinion and Order, Dkt. 73, and thereafter CLOSE this case.

Dated: October 30, 2026
New York, New York

SO ORDERED.

JENNIFER L. ROCHON
United States District Judge